**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| GINA ALEXANDREA ALVARADO, | No. SA CV 15-1400-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 2, 2015, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 30, 2015, and November 16, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 5, 2016, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.
/

**II.**

## **BACKGROUND**

Plaintiff was born on January 11, 1968. [Administrative Record ("AR") at 20, 169, 180.] She has past relevant work experience as a cashier-checker and administrative clerk. [AR at 20, 57.]

On July 11, 2012, plaintiff filed an application for a period of disability and DIB, and on July 13, 2012, she filed an application for SSI payments, alleging that she has been unable to work since April 17, 2012. [AR at 14, 169, 180.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 14, 120-21.] A hearing was held on October 17, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 27-63.] A vocational expert ("VE") also testified. [AR at 56-61.] On February 12, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from April 17, 2012, the alleged onset date, through February 12, 2014, the date of the decision. [AR at 14-22.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 9-10.] When the Appeals Council denied plaintiff's request for review on July 2, 2015 [AR at 3-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

### III.
### **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

1  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
2  If the claimant has a "severe" impairment or combination of impairments, the third step requires
3  the Commissioner to determine whether the impairment or combination of impairments meets or
4  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404,
5  subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If
6  the claimant's impairment or combination of impairments does not meet or equal an impairment
7  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
8  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
9  and the claim is denied. Id. The claimant has the burden of proving that she is unable to
10 perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a
11 prima facie case of disability is established. Id. The Commissioner then bears the burden of
12 establishing that the claimant is not disabled, because she can perform other substantial gainful
13 work available in the national economy. Id. The determination of this issue comprises the fifth
14 and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at
15 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 17, 2012, the alleged onset date.[1] [AR at 16.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the lumbar and cervical spine; obesity; and carpal tunnel syndrome. [AR at 17.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a),[3]

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through June 30, 2016. [AR at 16.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional
(continued...)

except that she be allowed to alternate between sitting and standing during the workday; no postural limitations; and frequent handling. [Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a cashier-checker and administrative clerk. [AR at 20, 58.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "check cashier" (Dictionary of Occupational Titles ("DOT") No. 211.462-026), and "order clerk, food and beverage" (DOT No. 209.567-014). [AR at 21, 60.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of April 17, 2012, through February 12, 2014, the date of the decision. [AR at 22.]

## V.

## THE ALJ'S DECISION

### A. PLAINTIFF'S CONTENTION

Plaintiff contends that the ALJ's RFC assessment lacks the support of substantial evidence. [Joint Stipulation ("JS") at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

/

/

---

[2](...continued) limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

**B.      DISCUSSION**

Plaintiff contends that the ALJ's RFC assessment, which relied on the opinions of two non-examining state agency physicians -- Dr. Tsoulos' November 26, 2012, opinion [AR at 73-81], and Dr. Vaghaiwalla's May 15, 2013, opinion on reconsideration [AR at 96-107] -- is not supported by substantial evidence.  [JS at 4-10, 15-18.]  Specifically, she contends that each of these non-examining physicians considered and found only that plaintiff's degenerative disc disease is a medically determinable impairment but, subsequent to their reports, plaintiff's "overall health deteriorated."  [JS at 5-7.]  Plaintiff cites to additional records not considered by the two agency physicians, including the following:

(1)   on April 10, 2013, plaintiff reported tingling and numbness in both arms at night and was diagnosed with cervical radiculopathy[4] [AR at 574-75];

(2)   on April 24, 2013, plaintiff reported tingling in her right arm, causing her to drop objects, she reported that her neck pain was constant and getting worse and physical therapy for her cervical spine was not working, and an examination revealed some flexion weakness in her right hand[5] [AR at 572-73];

(3)   on May 1, 2013, an MRI of plaintiff's cervical spine showed a disc bulge causing moderate canal stenosis at C3-C4, mild narrowing of the canal and the foramen at C4-C5, and a disc bulge at C5-C6 that caused mild to moderate narrowing of the central canal as well as the foramen[6] [AR at 754-55];

/

---

[4]  The notes reflect, however, that other than the multi-level degenerative disc disease of the cervical spine reflected on x-rays, and tenderness on palpation of the shoulder muscle and cervical spine, motor strength and motion were otherwise "normal."  [AR at 575.]

[5]  The Court notes, however, that the value for plaintiff's flexion "weakness," i.e., the motor strength of her right hand, was "4 out of 5" -- virtually full strength -- while the left hand was full strength at "5 out of 5."  [AR at 573.]  The only other finding that was not otherwise "normal" was tenderness on palpation of the shoulder muscles and cervical spine.  [Id.]

[6]  The MRI report also noted "no abnormal spinal signal" throughout the cervical spinal cord.  [AR at 754.]

|   |   |   |
|---|---|---|
| (4) | | a June 19, 2013, CT scan of plaintiff's thoracic and lumbar spine revealed disc extrusion/osteophyte formation that mildly reduced the size of the canal through which the central nerve travels, moderate narrowing of the foraminal canal, and facet joint degeneration [AR at 699]; |
| (5) | | on September 3, 2013, plaintiff underwent an epidural injection in her lumbar spine [AR at 858-59]; |
| (6) | | a September 5, 2013, electromyogram/nerve conduction study was "abnormal" and indicated a "moderate degree of carpal tunnel syndrome bilaterally" [AR at 759]; |
| (7) | | a September 25, 2013, treatment note indicated plaintiff was "not responding to conservative care and or pain management," on examination she had decreased range of motion, positive straight-leg raising on the right, and decreased sensation to the lower extremity; it was recommended she see a spinal surgeon for her cervical and lumbar conditions [AR at 718-19]; and |
| (8) | | an April 9, 2014, MRI study on plaintiff's lumbar spine showed plaintiff had grade I (least severe) spondylolistheseis at L4-L5 with narrowing of the disc space between the vertebrae, mild to moderate disc bulge at L2-L3, causing moderate spinal stenosis with no neural foraminal narrowing, mild bulge at L3-L4 causing mild central stenosis, and moderate bulge at L4-L5 causing moderate central stenosis and facet arthropathy, causing mild narrowing of the neural foramen [AR at 965]. |

[JS at 7-8.] Thus, plaintiff argues, her lumbar spine condition, which was previously "observed as being degenerative disc disease," revealed, pursuant to the April 9, 2014, MRI, the "presence of a neurological component in that the canals upon which the nerves travel were constricted," thereby corroborating plaintiff's report of radiating pain to her lower extremity. [JS at 8-9.] Similarly, the May 1, 2013, MRI of her cervical spine revealed stenosis, a condition that "could corroborate" plaintiff's reports of shooting pain from her neck to her upper extremity, whereas Dr. Tsoulos and Dr. Vaghaiwalla had "only noted neck pain without support from any objective study." [JS at 9; but see supra n.6.] Finally, plaintiff argues that the nerve conduction study revealed her carpal tunnel syndrome, an impairment that neither Dr. Tsoulos nor Dr. Vaghaiwalla had an

7

opportunity to consider. [JS at 9.] She contends that although the ALJ found the severe impairments of degenerative disc disease of the lumbar and cervical spine, obesity, and carpal tunnel syndrome, as of April 24, 2013, the RFC assessment was "no longer supported by substantial evidence" "in light of the expanded medical evidence," showing that plaintiff "suffers from more than degenerative disc disease," rendering the opinions of Dr. Tsoulos and Dr. Vaghaiwalla "stale." [JS at 10.]

Defendant contends that the ALJ did not err in relying in part on the opinions of the state agency physicians to develop plaintiff's RFC. [JS at 11.] Defendant states that at the time these physicians reviewed plaintiff's records, "Plaintiff's neck and hands were not causing any symptoms, and Plaintiff was diagnosed with degenerative disc disease." [Id. (citing AR at 64, 67, 68, 84, 90).] Despite the fact that Dr. Tsoulos and Dr. Vaghaiwalla may not have had a "complete view of the longitudinal record," defendant argues that *the ALJ* did have such a view, and in addition to the degenerative disc disease of the spine, determined that plaintiff also had the severe impairment of carpal tunnel syndrome. [JS at 11-12 (citing AR at 17, 754-55, 759).]

Determination of a claimant's RFC is *not* a medical opinion, but a legal decision that is expressly reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d) (RFC is not a medical opinion), 404.1546(c), 416.946(d) (identifying the ALJ as responsible for determining RFC). "It is clear that it is the responsibility of the ALJ . . . to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see also Soc. Sec. Ruling ("SSR")[7] 96-5p (RFC determination is reserved to ALJ and "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

---

[7] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

Here, based on his review of the entire record, including the later studies and reports cited by plaintiff, the ALJ determined that "[t]he record does not contain any treating source opinion that is more restrictive than the medical consultants' assessment." [AR at 19.] Neither does plaintiff point to any such opinion. The ALJ reviewed the treating records and found that they showed that plaintiff's "treatment has been generally successful in controlling" her symptoms. [Id.] He further found plaintiff to be "partially credible," and noted that although she claimed chronic severe pain in her neck, back, hips, and other joints, the records document "minimal use of pain medications" and improvement with treatment. [Id.] Similarly, he found her allegations of disabling pain to be supported by the fact that she has undergone physical therapy and steroid injections, but nevertheless inconsistent with examinations showing little more than tenderness to palpation, as well as some relief from pain with treatment. [Id.] Although plaintiff briefly alleges that the records she cited provide support for her allegations of pain [JS at 8-9] -- allegations that the ALJ found were supported but just not to the degree alleged by plaintiff -- she does not dispute the ALJ's credibility determination.

In light of the opinions of Dr. Tsoulos and Dr. Vaghaiwalla, as well as the ALJ's assessment of plaintiff's subjective symptom testimony and the medical evidence of record, the ALJ reasonably determined that plaintiff could perform sedentary work with a sit/stand option and limitation to frequent handling. This finding -- which was in fact more restrictive in some respects than the limitations suggested by Dr. Tsoulos and Dr. Vaghaiwalla -- was supported by substantial evidence in the record. Plaintiff fails to point to any opinion or other evidence that makes the ALJ's decision unreasonable. Tidwell v. Apfel, 161 F.3d 599, 601-02 (9th Cir. 1998) (plaintiff has the burden to establish the existence of a medically determinable severe impairment and disability). Thus, there was no legal error in the ALJ's RFC determination.

/
/
/
/
/

# VI.

# **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May  23 , 2016

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE